The **YOUNGSTOWN SHEET AND TUBE COMPANY, Appellant,**

v.

**LUCEY PRODUCTS COMPANY et al.,**
Appellees.

No. 25140.

United States Court of Appeals
Fifth Circuit.

Oct. 22, 1968.

# 136

John L. Roach, Dallas, Tex., for appellant.

John P. Dennison, Pecos, Tex., James M. O'Leary, Odessa, Tex., Travis W. Brown, Oklahoma City, Okl., Harrell Feldt, Vann Culp, Midland, Tex., Gene L. Dulaney, Snyder, Tex., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Frank X. Grossi, Attys., Dept. of Justice, Washington, D. C., for appellees; Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., Ernest Morgan, U. S. Atty., Harry Lee Hudspeth, Asst. U. S. Atty., of counsel.

Before RIVES, BELL and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

The present controversy between rival creditors and lien claimants was brought into the federal courts by way of interpleader, and there battle was joined over the proper distribution and allocation of a sum of money deposited with the court. All of the original claimants, however, are not now involved in this appeal. Some departed their battle stations prior to the district court's rendition of judgment, and we therefore deal only with those stalwarts who still remain. These include: 1) wage claimants; 2) mechanics and materialmen lienholders; 3) the United States; and 4) Youngstown Sheet and Tube Company, garnisher-creditor.

We begin with the chronology and logistics of this lien warfare. On July 3, 1965, Youngstown Sheet and Tube Company (Youngstown), appellant in the case at bar, instituted two actions in the state court in Dallas County, Texas, one for debt against Gould Drilling Company (Gould) and one for writ of garnishment against Texaco, Inc. (Texaco). Texaco was then indebted to Gould in the sum of $20,291.44 for drilling services performed by Gould on Texaco's P. L. Fuller lease in Scurry County, Texas, and Youngstown, as Gould's creditor, wished to garnish the Texaco debt. The writ of garnishment on Texaco was duly served on July 7, 1965, and sometime later, on November 4, 1966, judgment was entered in the state court establishing Youngstown's debt against Gould. This debt was determined to be in the sum of $15,444.98 plus attorneys' fees and court costs. On this basis Youngstown claimed to be a holder of a first and prior lien on the sum owed by Texaco to Gould.

While these events were moving toward fruition in the state courts, Texaco filed on July 23, 1965 a complaint and bill of interpleader in the United States District Court for the Western District of Texas. The complaint and bill of interpleader were filed pursuant to 28 U.S. C.A. § 1335 and § 2361 and named as defendants numerous parties not including the United States who were asserting the right to payment from the funds owing

by Texaco to Gould. Texaco was then dismissed from the action on the motion of all parties, but left on deposit with the district court the sum of $18,328.57 after allowable disbursements.

At this point in the proceedings claimants already present were joined by the United States. The government had filed its complaint in intervention asserting a claim of $6,389.31 against the taxpayer-debtor for unpaid federal employment taxes. However, since the fund left on deposit with the district court was now no longer sufficient to satisfy all these claimants, the district court's determination of lien priorities gave some of the combatants real and others only pyrrhic victories. That determination thereby precipitated this appeal.

Turning to the district court's judgment, we note that it awarded first priority to the wage claimants for a total of $2,260.75;[1] second priority to those holding mechanics' and materialmen's liens in the sum of $12,579.90;[2] and the remainder of the fund totaling $3,077.92 to the United States.[3] The Court then went on to allow the claim of Youngstown in the sum of $13,925.11, but noted that there were no funds available in satisfaction of such claim. Two other

claims totaling $12,432.12 were likewise allowed with no funds available.

Against this background, Youngstown, as garnisher-creditor, appeals. It attacks the priority awards to the United States, to the laborers and to the mechanics and materialmen lienholders. There are no cross appeals. For purposes of analytic convenience, we take up the claims in the order in which Youngstown attacks them, but for reasons set forth below, we reach and decide only the priority rights between the materialman lien claimant, Lucey Products, Inc. (Lucey), and Youngstown. On all other claims, we reverse and remand to the district court for re-allocation of priorities among the remaining combatants.

*The Wage Claimants and the Claims of the United States*

These claimants are grouped together because their right to the priorities assigned by the district court is attacked on the common ground that both failed at trial to submit adequate proof of their asserted liens.

At the outset it is best to declare what is not in dispute on the present appeal. Youngstown does not, for example, seriously challenge the superiority of a federal tax lien arising under Sections 6321[4]

1. Ten of the wage claimants were awarded the individual sums claimed; seven were awarded a lesser amount; two received nothing. On this appeal the seventeen recipients of awards have notified this Court that the amounts involved do not justify the expense of filing a brief or presenting arguments as appellees, and therefore we have no written argument on behalf of the wage claimants.

2. This amount included an award of $288.96 to Midland National Bank. Although the Bank was grouped with the materialmen lienholders, it actually was entitled to priority because of a perfected assignment of a portion of the interpleaded fund.

   Among the materialmen, seven claimants received the amount of their claims. Midland Bank received a reduced amount. Appellee Lucey Products was awarded $5,284.02 on a claim

totaling $11,755.94. The seven claimants first mentioned have submitted no briefs on appeal. Four have so notified the clerk giving as a reason the amounts and expense involved. A fifth, E. L. Farmer & Co., has notified the Court that it does not desire to be a party to this appeal and that it disclaims any interest in the deposited fund. No expression has been noted from two of this group.

3. The United States' claim as a federal tax lienholder was based on Gould's unpaid federal employment taxes for the second quarter of 1965. The $3,077.92 awarded the government was only in partial satisfaction of its total approved claim of $6,389.31.

4. 26 U.S.C.A. § 6321:
   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including

and 6322,[5] Internal Revenue Code of 1954, over a state garnishment lien[6] where the federal tax lien is filed before the garnishment lien is reduced to judgment.[7] United States v. Liverpool and London and Globe Insurance Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268. Nor is the priority award to the wage claimants challenged apart from an alleged absence of substantiating proof. What Youngstown does argue is that despite the fact that the government pleaded the timely fulfillment of the recording requirements of 26 U.S.C.A. § 6323, it offered no proof to that effect at trial. Neither did the wage claimants offer proof that their liens were perfected. Since the burden of proving such facts rested with both the government and the wage claimants, Worley v. United States, 9 Cir. 1965, 340 F.2d 500; United States v. Hartsell, 6 Cir. 1958, 261 F.2d 593, and since no evidence was forthcoming, Youngstown argues that the district court's priority award to the United States and to the wage claimants was in error.

In reply the United States directs our attention to the Federal Rules of Civil Procedure, particularly Rule 8(d), and to the fact that the government's complaint properly alleged assessment, notice and demand on August 18, 1965, served that day on Gould. The complaint also stated that the filing was consummated or effectuated in the office of the Clerk of the County Court of Midland County on August 23, 1965. Since these allegations contained in the government's complaint were not denied by Youngstown in a responsive pleading, the government argues that they are deemed admitted by Rule 8(d), and that the necessity for proof was thereby obviated.

Rule 8(d) of the Federal Rules of Civil Procedure prescribes that:

"Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

5. 26 U.S.C.A. § 6322:
"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

6. Tex.Rev.Civ.Stat.Ann. Art. 4084:
"From and after the service of such writ of garnishment, it shall not be lawful for the garnishee to pay to the defendant any debt or to deliver to him any effects; nor shall the garnishee, if an incorporated or joint stock company in which the defendant is alleged to be the owner of shares or to have an interest, permit or recognize any sale or transfer of such shares or interest; and any such payment or de-

livery, sale or transfer, shall be void and of no effect as to so much of said debt, effect, shares, or interest as may be necessary to satisfy the plaintiff's demand. The defendant may, at any time before judgment, replevy any effects, debts, shares, or claims of any kind seized or garnisheed, by giving bond, with two or more good and sufficient sureties to be approved by the officer who issued the writ of garnishment, payable to the plaintiff, in double the amount of the plaintiff's debt, and conditioned for the payment of any judgment that may be rendered against the said garnishee in such suit, which when properly approved shall be filed among the papers in the cause in the court in which the suit is pending. In all proceedings in garnishment where the defendant gives bond as herein provided for, such defendant may make any defense which the defendant in garnishment could make in such suit."

7. Such a rule controls the case at bar since the government alleged recordation of its lien in late August, 1965, and Youngstown did not become a judgment creditor until November, 1966.

The Rule is clear that the effect to be given to an undenied allegation in a pleading is dependent on whether or not the pleading is one to which a responsive pleading is required. But the government observes in its brief that none of the Federal Rules specify when a responsive pleading is required, with perhaps the sole exception of Rule 7(a) which limits the quantity of pleadings to be permitted:

"There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if leave is given under Rule 14 to summon a person who was not an original party; and there shall be a third party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

Despite its apparent clarity, nothing is said in Rule 7(a) or any other Rule that we have been able to find that indicates the responses allowed or required to a complaint in intervention in an interpleader suit. On the other hand, the government urges us to regard a complaint in intervention as analogous to a conventional complaint or to a counter-claim. Such analogy would, of course, require a response to all the averments in the government's complaint, and absent denials of the alleged recordations, such fact would be deemed admitted. Youngstown on its part, however, urges that the government's failure to prove the lien formalities is of lethal proportions, and merits reversal of the district court's judgment.

We think neither approach is suited to the case at bar. In the first place, the cases cited by Youngstown are cases where the issues were of substantive proportions and therefore subject to testimony on both sides. In those cases issues were given testimonial evaluation, while in the case now before us the formalities of lien perfection were never made the object of trial court inquiry. Moreover, the cases cited by Youngstown did not involve peripheral or adjectival facts. In those circumstances there was no chance that the party with the burden of responsive pleading would fail to understand that such essential facts were in issue. On the other hand, in the case at bar the government and wage claimants could have believed that their liens were not under attack because the answer of Youngstown to their several complaints contained no such challenge.

The government's position is likewise open to question. The Federal Rules of Civil Procedure are for the most part coherent, explicit and synoptically cover the areas of their concern. They are cogently and logically expressed. It may be that Rule 8(d) does not demand a denial of the facts involved in an intervention because it may not require a responsive pleading. Certainly, the government's analogy does not render the contrary proposition so compelling that we must decide this issue in its favor. Rather we do not essay this task of construction because it is unnecessary to a decision of the case at bar.

■ Although the general rule is that the failure to put in evidence all the proof necessary for a judgment is fatal error, there are occasions when the innocent, unwary and the justifiably unknowing litigants are entitled to some judicial benevolence. Such benevolence is backed by both statutory sanction and by decisions of the United States Supreme Court. In the words of Justice Black in Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1041:

"Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. * * * "

In the case at bar the wage claimants and the government had every reasonable right to assume that the basic and formal facts of their liens were not in denial. They were justifiably lulled into believing that only the legal consequences flowing from such facts were in dispute or in contention. The Federal Rules of Civil Procedure, generally perceptive and endowed with prescience, are normally quite explicit, but here we find them ambiguous or inconclusive in respect to the necessity of filing a responsive pleading to a plea in intervention. Such ambiguity, in conjunction with reasonable expectations as to what facts were and were not in issue, persuades us that the rigid enforcement of procedural technicalities would be inappropriate in the present instance. O'Brien v. Willys Motors, Inc., 6 Cir. 1967, 385 F.2d 163; Frieze v. West American Ins. Co., 8 Cir. 1951, 190 F.2d 381.

■ A trial is an exploration of facts, not a battle of wits. Its *modus operandi* stresses the paramountcy of fair notice pleading and fact finding unencumbered with an excess of detail. A litigant who was unable to find any authority demanding proof is just as disadvantaged by being uninformed as by being misinformed by the law. Woods v. Stewart, 5 Cir. 1948, 171 F.2d 544. Therefore, while the trial court should have required that the wage claimants and the government present proof of their liens and their proper recordation, we think the circumstances require a remand to allow the submission of such proof. Such a procedure is well sanctioned and within our discretion. McKissick v. United States, 5 Cir. 1967, 379 F.2d 754. As was said in Morgan v. Garris, 1962, 113 U.S.App.D.C. 222, 307 F.2d 179, 181:

" * * * Although we 'cannot hold a trial court to be in error in failing to decide an issue not put before it in a civil action * * * it does not follow that we can never decide such an issue or remand a case to the [trial court] with direction to decide it.' Stouper v. Jones, 109 U.S.App.D.C.

106, 109, 284 F.2d 240, 243 (concurring opinion of Judge Bazelon). The Supreme Court has said, 'we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires.' Patterson v. State of Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 79 L.Ed. 1082. This Court also has this power. 28 U.S.C. § 2106."

In our era of liberality in pleading where trials are no longer esoteric games guided by archaic rules, courts must insure that procedural niceties are not used to deprive a litigant of his day in court. As Justice Black noted in Surowitz v. Hilton Hotels Corp., 1966, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807, 814:

"The basic purpose of the Federal Rules is to administer justice through fair trials * * *. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as posisble guarantee that bona fide complaints be carried to an adjudication on the merits."

This spirit which animates the Federal Rules of Civil Procedure has equal applicability to 28 U.S.C.A. § 2106. To reverse and render with respect to the wage claimants and the government in the case at bar would perpetuate a "clear miscarriage of justice." Hartley & Parker, Inc. v. Florida Beverage Corporation, 5 Cir. 1965, 348 F.2d 161, 164. It would ignore the fact that both the government and the wage claimants could well have relied on Youngstown's failure to deny the asserted lien claims; it would ignore the uncertain state of the applicable pleading rules; and it would be a complete disregard of the fact that the trial court was not notified of or confronted with this issue. The purpose of remanding is "not a right to afford a defeated litigant another day in court because he thinks that if he were given the oppor-

tunity to try his case again upon a different theory he might prevail." Miller v. Avrom, 1967, 127 U.S.App.D.C. 367, 384 F.2d 319, 323. Rather its purpose is to insure that substantial justice is done, and we resort to it here only because the equities so require.

### The Mechanics and Materialmen Lien Claimants

Apart from the Midland Bank,[8] whose priority is not here under appellate attack,[9] we have cornucopian facts regarding the nature and attempted perfection of materialmen's liens only with regard to Lucey. The other mechanics and materialmen lien claimants offered no proof of their liens, nor did they file briefs with this Court. On remand, however, they can present their panoply of facts respecting the existence and proper perfection of these liens for the same reasons already denominated as applicable to the government and wage claimants. We find the case of Capital Oil & Gas Co. v. Casey, Tex.Civ.App.1927, 299 S.W. 466 (no writ), relied on by Youngstown, as no bar to this procedure. *Casey* involved the sufficiency of *pleadings* under Texas law. It therefore has no relevance to the case at bar which is governed in procedural matters by the Federal Rules. Coastal Airlines v. Dockery, 8 Cir. 1950, 180 F.2d 874, 877. In fact, the holding of Capital v. Casey, supra, is alien to our notice concept of pleading, and must therefore be disregarded. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

The claims of Lucey Products, Inc., may now be considered in full. Lucey alleged and proved that it furnished materials to Gould on the Fuller lease in June of 1965, in aid of Gould's drilling efforts for Texaco. Notice of claim of $11,755.94, based on materials and services furnished to Gould was allegedly mailed to Texaco August 30, 1965, with liens filed in the county in which the drilling site was located, on October 14, 1965. As previously noted, Youngstown had its writ of garnishment served on Texaco on July 7, 1965.

Youngstown states that Lucey's mechanic's and materialman's lien was not choate, since its claim was not reduced to judgment. Youngstown's claim, on the other hand, had been reduced to judgment as of November 4, 1966, and so, argues Youngstown, takes precedence over the Lucey claim. Youngstown cites United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; Ulhorn v. Owens, S.D.Tex.1962, 211 F.Supp. 798; First National Bank of Lubbock v. Jenkins, Civ.App.Tex.1961, 350 S.W.2d 52 (no writ); and United States v. Miller, Civ.App.Tex.1960, 331 S.W.2d 436 (writ ref'd, n. r. e.), cert. denied, 364 U.S. 880, 81 S.Ct. 168, 5 L.Ed.2d 102, in support of its claim to a superior lien. However, these cases relate to hierarchical problems of priority between a federal tax lien and state created liens. The case at bar, on the other hand, except for the government's lien for employment taxes, presents only problems of positioning liens whose order of priority as well as existence are directed solely by state law. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 65, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Youngstown's cases are therefore inapplicable to the contest between Youngstown and Lucey. In considering who is to prevail under Texas law between a garnisher who has reduced his claim to judgment and the holder of a mechanic's lien, we turn first to the controlling Texas statutes. Lucey's claim to a mechanic's and materialman's lien is asserted under Tex.Rev.Civ.Stat. Ann. Arts. 5473, 5474, and 5476. Art. 5473 provides that:

"Any person \* \* \* materialman \* \* \* or mechanic, who shall, under contract, express or implied, with the

---

**8.** See note 2, supra, on the grouping of the Bank with the materialmen.

**9.** Youngstown notes in its brief: "We have concluded that its [Midland Bank's] assignment was timely and properly perfected and that the claim of such Bank to the sum of $288.96 is prior and superior to the claim of all other parties. For that reason, such claim is not further discussed herein."

owner of any land * * * or the owner of any gas pipeline or oil pipeline or the owner of any oil or gas pipeline right-of-way, * * * perform labor, furnish or haul material, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such * * * oil or gas pipeline, shall have a lien on the whole of such * * * oil pipeline * * *, including the right-of-way for same * * * and upon the materials, machinery, and supplies so furnished or hauled, and upon said * * * oil or gas pipeline * * * for which the same are furnished or hauled, and upon all of the other * * * pipeline and right-of-way therefor, for which said materials, machinery, and supplies were furnished or hauled or labor performed. * * *"

Art. 5474 then confers rights on a materialman such as Lucey who furnishes supplies to a contractor such as Gould when such supplies are used in connection with a contract covering items detailed in Art. 5473:

"Any person, corporation, firm, association, partnership or materialman who shall furnish or haul such machinery, material or supplies to a contractor or subcontractor, or any person who shall perform such labor under a subcontract with a contractor, or who as an artisan or day laborer in the employ of such contractor or subcontractor shall perform any such labor, shall have a lien upon all such property or interest described in the preceding article, including right-of-way, for which said material and supplies were furnished or hauled and labor performed, in the same manner and to the same extent as the original contractor, for the amount due him for material furnished or for such hauling or labor performed."

It must be conceded that these statutes by themselves do not explicitly provide that a materialman's lien may be affixed to an account receivable owing by a garnishee (Texaco) to a debtor (Gould), nor do they provide that such liens take precedence over a writ of garnishment if the materials were furnished before the writ of garnishment issued. But these matters were both conclusively settled by the Texas Court of Civil Appeals in Crutcher, Rolfs, Cummings, Inc. et al. v. Big Three Welding Equipment Co., Inc., Tex.Civ.App.1949, 224 S.W.2d 884, reversed on other grounds, Big Three Welding Equipment Co., Inc. v. Crutcher, Rolfs, Cummings, Inc., et al., 1950, 149 Tex. 204, 229 S.W.2d 600. In that case the debtor, an independent contractor, entered into a contract which obligated him to do various things in connection with a pipe line. In the fulfillment of this agreement with the pipe line company, the debtor became obligated to several materialmen, and they were eventually impleaded in a suit brought by another creditor who had caused a writ of garnishment to issue against the owner of the pipe line. The Court of Civil Appeals therefore had to decide priorities among creditors in a context almost identical with the fact situation in the case at bar. The result was as follows:

"We hold that Art. 5473 does apply here, and that 'these appellants' acquired mechanics' and materialmen's liens under Art. 5473 to secure their claims. The effect of this holding must be to hold that the garnisher did not acquire a garnishment lien which was enforcible as against the mechanics' and materialmen's liens acquired by 'these appellants' in virtue of Art. 5473. Whether or not Article 5466, which provides that funds subjected to mechanics' and materialmen's liens shall not be garnished by other creditors 'to the prejudice of such sub-contractors, mechanics, laborers or material men,' is here made expressly applicable by the terms of Art. 5479, we need not determine. For it is not disputed that the services and material for which the liens were sought, were furnished and performed before the writ of garnishment was ever issued. And it is well settled that mechanics' and materialmen's liens relate back to

the time when the work was performed or the material furnished. Thomas Trammell & Co. v. Mount, 68 Tex. 210, 4 S.W. 377, 379, 2 Am.St.Rep. 479; 29 Tex.Jur. 558 et seq."

█ In the case at bar, the materials furnished to Gould by Lucey were all delivered prior to July 7, 1965, when Youngstown caused a writ of garnishment to be issued against Texaco. Since it is not disputed that Lucey complied with the filing and notice requirements of Art. 5476a and 5476c, Lucey had a properly perfected lien which related back to a time prior to the issuance of Youngstown's writ of garnishment. As decided by the *Crutcher* case, such a lien is prior in time and superior in right to a writ of garnishment issued after the materials are delivered.

This order of priorities is not altered by the fact that the acts of perfection required of the materialmen occurred after the writ of garnishment was issued. The same sequence existed in *Crutcher*, supra, but that case indicated that the perfection of a lien does not determine its inceptivity. Recording statutes in this instance are not lien creative, but lien corroborative. Their purpose is to avoid the pell-mell of racing to the courthouse by giving to parties a period of time during which liens can be perfected. Thus in the recent case of Trane Company v. Wortham, Tex.Civ.App.1968, 428 S.W.2d 417, 419 (no writ), the Texas Court of Civil Appeals noted:

"It is a rule of long standing that the mechanic's and materialman's lien statutes of this state will be liberally construed for the purpose of protecting laborers and materialmen. It is also well established that it is not the registration required by the law, but the law itself, which gives a mechanic or materialman a lien upon the property improved by the labor or by use of the materials by reason of which a lien is asserted. The filing of the affidavit required by Article 5453, V.A.C.S.,

does not create a lien on the property, but fixes and secures upon it an existing lien. University Savings and Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287 (Tex.Sup.1968)."

█ Despite this clear pronouncement, Youngstown urges that a mechanic's and materialman's lien is "inchoate" until reduced to judgment, and therefore inferior to a writ of garnishment upon which a judgment has already been rendered. As noted earlier, however, Youngstown's cases on this point involve the question of priority between federal and state liens, not, as in the case at bar, priority between two liens both of state origin. We find no authority for the proposition that the concept of choateness affects the hegemony of the state-created liens here under scrutiny. Rather it is clear that the federal statutes involved in the cases which appellant has relied on do "not purport to affect the time at which local liens (are) deemed to arise or to become choate * * *" United States v. Pioneer American Ins. Co., 1963, 374 U.S. 84, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770, 775. This is a matter purely of state law. We are convinced that the *Crutcher* case controls on the facts before us. The result is not changed by William J. Burns International Detective Agency v. General Electric Supply Co., Tex.Civ.App.1967, 413 S.W.2d 775 (no writ). That case was authority only for the proposition that the perfection of a mechanic's and materialman's lien must be undertaken by the one who initially furnished the materials or performed the services, and not by that person's assignee. It is true that in considering the motion for rehearing, the court in *Burns* suggested that a garnisher might prevail over the holder of a mechanic's and materialman's lien even if such lien were filed first. But such a suggestion, besides being merely dicta, appears to be directed to the assignee of the materialman, not to the materialman himself. The *Burns* case is thus not in point.[10]

10. We have also considered the statement in the *Burns* case that a mechanic's and materialman's lien "does not seem to take effect until after judgment."

Finally, in valediction, Youngstown urges that Lucey was parsimonious and niggardly in its description of the oil leasehold here involved, and therefore failed to demonstrate that its claims were covered by Art. 5473. Youngstown relies on Continental Supply Co. v. Gillespie, Tex.Civ.App.1925, 269 S.W. 859 (no writ) for the proposition that property attached under authority of a mechanic's and materialman's lien statute must be specifically described. We find no substance to this allegation. A comparison of the lien affidavit found to be inadequate by the court in *Gillespie* and the affidavit filed by Lucey in the case at bar reveals a substantial difference. In *Gillespie*, the only description of the land referred to in plaintiff's affidavit was as follows:

"That the said drill pipe material was * * * to be used in developing for oil, and producing oil from, certain land, premises and leasehold of land in what is known as the Markham Oil Field, in Matagorda county, Tex., *the description of which land and mineral lease thereon is not known to this affiant.*" (emphasis added)

In the case at bar, on the other hand, the lien affidavit filed by Lucey refers to an oil producing leasehold estate in Scurry and Kent Counties, Texas, and pinpoints those leaseholds in a most precise manner:

"Lease dated November 18, 1948, from P. L. Fuller, W. M. Fuller and Andrew P. Fuller, Lessors, recorded in Volume 50, Page 239, Oil and Gas Lease Records, Scurry County, Texas, and in Volume 51, Page 530, Deed Records of Kent County, Texas, insofar as said lease covers Section 498, Block 97, H & T C RR Co."

Such description speaks for itself. We therefore find no basis for Youngstown's allegation that Lucey's claim to a mechanic's and materialman's lien fails for want of specificity.

But Youngstown claims that Lucey's lien must fail for still another reason. *Gillespie* is cited for the further proposition that Lucey failed to establish the status of its debtor as that of a "contractor" within the meaning of Art. 5474. We find, however, that the record before us is not bare on this point as it was in *Gillespie*. Here, unlike *Gillespie*, supra, the record contains ample proof that Gould utilized materials furnished to it by Lucey in furtherance of Gould's contract with Texaco. This contract and Gould's assignment to Lucey of its claim against Texaco were both introduced into evidence. These documents established beyond question that Gould was a "contractor" within the meaning of Art. 5474. On such a state of the record there is no danger, as there was in *Gillespie*, that "Statutory liens will * * * be extended by implication to embrace matters beyond the plain terms of the statute." Continental Supply Co. v. Gillespie, Tex.Civ.App.1925, 269 S.W. 859, 860 (no writ). The integrity of the Texas statute is not here in jeopardy.

In view of the above considerations, we reverse and remand to the district court with directions to proceed in a manner consistent with this opinion.

William J. Burns International Detective Agency v. General Electric Supply Co., Tex.Civ.App.1967, 413 S.W.2d 775, 777 (no writ). The authorities cited in support of this statement have no bearing on the facts which control the case here under review.