Lisa Kay HOWARD, by next friend and mother, Brenda Howard LEE, and Laura Michelle Howard, by next friend and mother, Brenda Howard Lee; Mary A. Parris, Widow of Allie Parris, deceased; John Howard and Brenda Howard Lee, as Joint Administrators of the Estate of Ronald Howard, Plaintiffs-Appellants,

v.

Paul M. ALFREY and Duff's Enterprises, Inc., Defendants,

Parris Roofing and Sheet Metal Company and American Casualty Company of Reading, Pennsylvania, Intervenors-Appellees.

No. 82–8191.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1983.

E. Lamar Gammage, Jr., Cedartown, Ga., for plaintiffs-appellants.

Smith, Shaw, Maddox, Davidson & Graham, William E. Davidson, Jr., C. Wade Monk, Rome, Ga., for intervenors-appellees.

Before HILL and VANCE, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

This appeal asks us to determine whether a workers' compensation insurer is entitled to subrogation rights granted under Tennessee law when the insurer makes initial direct payments consistent with the Tennessee award schedule, but it is later determined that the award is payable under Georgia law. Georgia does not allow subrogation in this context. The district court ruled that Georgia courts would recognize the insurer's subrogation rights for the payments unilaterally paid under the Tennessee schedules. We disagree and reverse.

I.

The facts leading to this proceeding are not disputed. Allie Parris and Ronald Howard died as a result of an automobile collision in Murray County, Georgia on March 6, 1980. Both decedents were residents of Tennessee and were employees of Parris Roofing & Sheet Metal Company. Parris Roofing is located in Tennessee, but does a considerable amount of business just over the state line in Georgia. When the accident occurred, decedents were engaged in the course of employment.

American Casualty Company provides workers' compensation insurance to Parris Roofing. Following the accident, Parris Roofing and American Casualty initiated direct payment to the dependents/survivors of decedents. These payments were calcu-

lated pursuant to the Tennessee Workers' Compensation Act,[1] which authorizes weekly payments of $107.00 for 400 weeks. Tenn.Code Ann. § 50–1010. On February 25, 1981, however, the dependents/survivors of both decedents applied for a hearing under Georgia Workers' Compensation Act. The claimants selected Georgia because Georgia law provides slightly higher weekly benefits of $110.00 per week for 400 weeks. *See* Ga.Code Ann. § 114–413. In addition, unlike the Tennessee Act, the Georgia Act does not grant employees or insurers subrogation rights.[2]

An Administrative Law Judge (ALJ) considered the case and determined that Georgia had jurisdiction over the claims. Accordingly, the ALJ awarded compensation benefits to claimants under Georgia law. At the request of American Casualty, the ALJ also granted the insurer dollar for dollar credit for the payments already paid to claimants. As of the date of the ALJ's order, American Casualty had paid $9,059.00 to the survivors/dependents of Allie Parris and $9,059.00 to the survivors/dependents of Ronald Howard. Thereafter, all payments were made at the higher Georgia levels. In addition, American Casualty paid claimants the difference between the $9,059.00 paid to each group of survivors/dependents and the amount which would have been paid under Georgia law from the date of decedents' death until the date of the ALJ's order.

The survivors/dependents also filed three related wrongful death actions in federal district court. Defendants in these actions were Paul M. Alfrey, the driver of the trailer truck which struck Allie and Parris' truck, and Alfrey's employer, Duff Enterprises. The actions were consolidated in the district court, but ultimately were set-tled. On July 21, 1981, however, Parris Roofing and American Casualty moved to intervene in an effort to assert a subrogation lien. Accompanying the motion was a complaint in which the intervenors asserted a vested right under the Tennessee subrogation statute to recover so much of the proceeds of any settlement as would reimburse them for the benefits paid under the Tennessee Act. The plaintiffs did not respond to the intervenors complaint; however, defendants did respond.

At the consent of all parties, intervention was granted. Shortly thereafter, the intervenors and defendants filed cross-motions for summary judgment on the subrogation claim. Defendants, intervenors, and plaintiffs all filed briefs with respect to the summary judgment motions. Upon consideration of the briefs, the district court granted the intervenor's motion and denied defendants' motion. The court treated the latter motion as that of both defendants and plaintiffs. Plaintiffs now appeal this judgment of the district court.

## II.

■ Initially, appellees argue that appellants are barred procedurally from objecting to the district court's summary judgment for failure to respond to appellees' intervening complaint. Pursuant to Rule 24(c) of the Federal Rules of Civil Procedure, appellees' motion to intervene was accompanied by a complaint setting forth the alleged subrogation rights under Tennessee law.[3] Because appellants failed to respond, appellees maintain that appellants have admitted the allegations made in the complaint as prescribed in Rule 8(d). Rule 8(d) provides:

1. The record indicated that payments of benefits on the Howard claim actually was initiated upon demand of Donald Detrick, the Tennessee attorney for Lisa and Michelle Howard. Record, vol. 2, at 213–14. The record, however, does not indicate that Detrick demanded payment consistent with Tennessee law.

2. Georgia repealed its subrogation statute (Ga. Code Ann. § 114–403) in 1972. *See generally*

*Intex Products, Inc. v. Roper Corp.,* 160 Ga. App. 579, 580, 287 S.E.2d 610, 611 (1981).

3. Rule 24(c) provides in part: "A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c).

EFFECT OF FAILURE TO DENY. Averments in a pleading *to which a responsive pleading is required,* other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

Fed.R.Civ.P. 8(d) (emphasis supplied).

■ In analyzing the applicability of Rule 8(d), the obvious question is whether appellees' intervening complaint is a pleading to which a responsive pleading is required. Appellees analogize their complaint to an original complaint to which a responsive pleading is required. Fed.R.Civ.P. 7(a).[4] Appellants maintain that this argument was raised and rejected in *Youngstown Sheet & Tube Co. v. Lucey Products Co.,* 403 F.2d 135 (5th Cir.1968). Neither position is entirely correct; however, we find in *Youngstown* persuasive dictum so as to conclude that appellants' failure to respond to the intervening complaint does not preclude this appeal.

In *Youngstown,* the former Fifth Circuit observed that nothing in Rule 7(a) or any other Rule indicated whether a response was allowed or required to a complaint in intervention. 403 F.2d at 139. In light of this ambiguity, the court suggested that perhaps Rule 8(d) does not demand a denial of facts in intervention. *Id.* Nevertheless, the court refused to commit itself on a definite construction of Rule 8(d), since such a construction was not essential to the disposition of the appeal. *Id.* Instead, the court relied upon the facts and circumstances of the case and on the premise that federal rules should permit adjudication of the merits of a dispute whenever possible. *Id.* at 139–40.

Similarly, it is unnecessary in this case to proclaim a hard and fast rule. Rule 8(d) may or may not apply to a complaint accompanying a plea of intervention. What is important is that the issue of appellees' subrogation rights was adequately presented to the district court. Defendants filed a responsive pleading to the intervenors' complaint and appellants later adopted that position. All parties, including appellants, filed briefs with respect to the cross motions for summary judgment. Moreover, the district court treated defendants' summary judgment motion as the plaintiffs' motion as well. In fact, the court concluded its order, "ACCORDINGLY, intervenors' summary judgment motion is GRANTED; plaintiffs' and defendants' motions for summary judgment are DENIED." Record, at 364. Recognizing that "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them," *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), we reject appellees' argument that appellants are estopped from bringing this appeal.

### III.

Turning to the merits of the appeal, the general principle of law with respect to an insurer's subrogation rights when a conflict of law arises is as follows:

As to third-party actions, if compensation has been paid in a foreign state and suit is brought against a third-party in the state of injury, the substantive rights of the employee, subrogated insurance carrier and the employer are ordinarily held governed by the laws of the foreign state . . . .

4 A. Larson, *The Law of Workmen's Compensation* § 88.00 (1982). The critical question therefore is whether the disputed com-

---

**4.** Rule 7(a) limits the number of allowable pleadings:

There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-

party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Fed.R.Civ.P. 7(a). Neither the Rule nor its accompanying notes indicate whether a responsive pleading is required to an intervenor's complaint.

pensation was paid under Tennessee or Georgia law. Appellees maintain that because initial direct payments were calculated under the Tennessee Act, that Tennessee subrogation rights vested immediately upon the insurer's voluntary payment. Appellants urge that the Georgia ALJ effectively transferred total jurisdiction to Georgia and that all amounts were paid under the Georgia Act.

In support of the claim that Tennessee subrogation rights vested immediately upon payment, appellees rely upon *Spengler v. Employers Commercial Union Insurance Co.*, 131 Ga.App. 443, 206 S.E.2d 693 (1974) (application for cert. denied). *Spengler,* however, is weak support for this position. Initially, *Spengler* is a decision by the Georgia Court of Appeals construing the effect of repeal of the Georgia subrogation statute and not its Tennessee counterpart. In addition, *Spengler* was a consolidated appeal by insurance companies who had paid compensation to claimants as required under Georgia law. The insurance companies also complied with the notice of claim requirements which at that time were embodied in the Georgia Act and were necessary to preserve subrogation and lien rights. 131 Ga. App. at 443–44, 206 S.E.2d at 695. Thereafter, the individual claimants initiated lawsuits against third-party tort-feasors. While these suits were pending, however, the Georgia subrogation statute was repealed. *Id.* The Georgia Court of Appeals ruled that because compensation had been paid properly under the Georgia Compensation Act, and notice requirements had been satisfied, the insurers' subrogation rights had vested prior to the statutes repeal.[5] Moreover, the court could find nothing to suggest that repeal of the statute warranted retroactive application. 131 Ga.App. at 447–48, 206 S.E.2d at 697. Nowhere in *Spengler,* however, is there any indication that the original compensation paid was arguably payable under the law of another state.

In contrast, the present case raises a significant question as to whether appellees' payments were made under the Tennessee Worker's Compensation Act or whether they were made and calculated pursuant to the Georgia Act from the initial date of injury. Clearly, the ALJ anticipated that appellants' rights under the Georgia Act arose on the date of the accident and that compensation was payable under Georgia law from that point onward. After determining that Georgia had jurisdiction over the claims, the ALJ also addressed the subrogation issue.

> The real issue in this case is the subrogation rights of the employer/insurer. Under Tennessee Law they would have such a right whereas under Georgia's Law there is no subrogation. While this is not directly a payment of compensation it does for all practical purposes directly effect what compensation benefits, if any, will be paid. Should the claimants make a substantial recovery from the third party tort-feasor the subrogation aspects could result in claimants having to reimburse the defendants 100% of any payments made and/or losing entitlement to any future payments. The ultimate effect of this could result in a claimant receiving no actual compensation benefits. The legislature of this state in its wisdom repealed the subrogation laws. I see no reason why this claimant should be denied benefits in Georgia merely to give an employer/insurer subrogation rights our legislators rejected. Record, at 22.

Appellees vigorously maintain that the ALJ was without power to determine the applicability of Tennessee subrogation rights. Assuming appellees are correct, it does not appear that the ALJ's observation was intended to decide the issue. Indeed, at the time of his order, there was not a foreseeable settlement or award to which appellees could claim a subrogated interest. What is significant from his observation is that the ALJ clearly expected that the amount awarded claimants under the Geor-

---

5. Appellees are unable to point to any case law suggesting that subrogation rights vest similar-

ly under the Tennessee Act.

gia Act would not be encumbered by a Tennessee subrogation lien. Moreover, it was upon this assumption that appellees were granted full dollar for dollar credit towards the Georgia award for the earlier amounts paid, so long as the earlier payments were supplemented to equal the amount properly payable under Georgia law. The decision to grant such credit for direct payments is a discretionary decision on the part of the ALJ. *See* Ga.Code Ann. § 114–415 (1981 Supp.); *General Motors Corp. v. Dover,* 239 Ga. 611, 238 S.E.2d 403 (1977); *Sprayberry v. Commercial Union Insurance Co.,* 140 Ga.App. 758, 232 S.E.2d 211 (1976).[6] Acting within this discretion, the ALJ therefore allowed appellees to apply payments calculated under Tennessee Act towards satisfaction of their liability under the Georgia statute. In so doing, the earlier direct payments were deemed part of the Georgia award. *See* Ga.Code Ann. § 114–415 (1981 Supp.).

By entering an award consistent with Georgia law, giving credit under Georgia law for appellees direct payments, and requiring supplemental payments so that the total award would equal the amount payable under Georgia law, the ALJ effectively rendered all payments made by appellees payments under the Georgia Compensation Act. The essence of appellees' argument in its intervention plea, however, assumes appellees are entitled to double credit for these payments. Appellees want their earlier payments applied against their Georgia liability and at the same time want the same payments credited under the Tennessee Act. Had appellees not received credit for their earlier payments or had appellees received less than dollar for dollar credit, their claim that payments were made under the Tennessee Act would be more persuasive. As it stands, however, this is a Georgia Worker's Compensation case and all payments thus made have been under the Georgia Worker's Compensation Act.

The district court's summary judgment recognizing that Tennessee subrogation rights may be claimed by appellees therefore is

REVERSED.

---

6. At one time, the decision to give credit was not even discretionary. A compensation board simply was not authorized to give credit. Such payments were considered gratuities in the absence of an approved agreement or award. *Re-* *liance Ins. Co. v. Richardson,* 137 Ga.App. 678, 224 S.E.2d 812 (1976); *see Mason v. City of Atlanta,* 124 Ga.App. 849, 186 S.E.2d 285 (1971).