35779. GENERAL FINANCE & THRIFT CORPORATION
*v.* BANK OF WRIGHTSVILLE.

DECIDED OCTOBER 18, 1955.

*Joe W. Rowland,* for plaintiff in error.

*Emory L. Rowland,* contra.

QUILLIAN, J. ■ The conditional-sale contract for the purchase money of the automobile, originally payable to Dublin Lincoln Mercury Company and held by the Bank of Wrightsville, dated October 5, 1953, and recorded October 5, 1953, was without question a superior lien to the bill of sale to secure a debt held by General Finance & Thrift Corporation dated July 8, 1954, and recorded July 13, 1954. When the conditional-sale contract was transferred it became the bank's property, and the bank succeeded to all rights of the transferor. *Wilkins, Neely & Jones* v. *Gibson,* 113 *Ga.* 31 (1) (38 S. E. 374, 84 Am. St. R. 204).

■ Had this conditional-sale contract been foreclosed and placed in the hands of the sheriff by virtue of its priority over General Finance & Thrift Corporation's bill of sale above referred to, the bank would have been entitled to the money in the hands of the sheriff.

However, upon the trial of a money rule, brought, as was this case, under the provisions of Chapter 24-211 of the Code, in order for the priority of a lien to be asserted, it must not only be of higher dignity than other liens contesting for the funds in the hands of the officer, but it must be a lien that has been duly foreclosed. "An unforeclosed retention-of-title contract, to all intents and purposes so far as foreclosure and enforcement against the property or maker are concerned, is the same as an unforeclosed mortgage; and it has repeatedly been held that an unforeclosed mortgage can not in a court of law, claim money which is in court for distribution." *Smith* v. *C. I. T. Corp.,* 64 *Ga. App.* 481 (13 S. E. 2d 731).

Thus it is apparent that though the bank's conditional-sale contract, originally held payable to Dublin Lincoln Mercury Company, was a lien of higher dignity than the Finance Company's bill of sale, the conditional-sale contract was eliminated from the contest for the money in the hands of the sheriff.

"An unforeclosed retention-of-title contract, to all intents and purposes so far as foreclosure and enforcement against the property or maker are concerned, is the same as an unforeclosed

mortgage; and it has repeatedly been held that an unforeclosed mortgage can not in a court of law claim money which is in court for distribution." *Smith* v. *C. I. T. Corp.*, supra. Here there are two liens that were foreclosed resulting in executions being issued based thereon. As between them it took extraneous evidence to determine which execution was superior to the other. Either lienholder was in a position to take the fund because both liens were foreclosed, but the one superior would take over the one that was inferior. The one holding the inferior lien then offered extraneous evidence that he had another unforeclosed lien which was superior to the two which were foreclosed. However, to allow him to take under this lien would violate the rule quoted above and set forth in headnote two of the majority opinion.

Here, the bank, by the assignment of the retention-of-title contract, was subrogated to all the rights of the original holder thereof, but the bank did not by reason of such assignment gain any right which the original holder did not have. The original holder did not have the right to claim the proceeds of funds brought into court under a money rule unless such holder's contract was foreclosed, from which it follows that the bank has no more right to claim the proceeds on such unforeclosed instrument than the original holder had. Therefore, application of the principles of subrogation will not help the defendant in error here.

Accordingly, the bank is in the same position as though it had taken two liens for the same debt and had thereafter elected to proceed on one of them rather than on the other. There do not appear to be any Georgia cases dealing with an election of remedies by one who owns two liens on the same property for the same debt. In a well reasoned Iowa case, Mutual Surety Co. of Iowa *v.* Bailey, 3 N. W. 2d 627, it appears that the plaintiff was assignee of a judgment against the defendant, which judgment provided that the successful plaintiff therein was entitled to a writ of special attachment by virtue of a debt on which he also owned a chattel mortgage, and which judgment entitled him to special execution for sale of the property to satisfy the indebtedness. Plaintiff as assignee succeeded to all the rights of the judgment plaintiff, but "the rights that Steltzer [judgment plain-

tiff] was claiming were under the specific attachment and not under the chattel mortgage. . . The parties saw fit to make no claim under the chattel mortgage but relied entirely upon the lien of the specific attachment. They foreclosed the specific attachment and secured a judgment and decree. By proceeding to foreclose the lien of the specific attachment they waived all rights that they had under the chattel mortgage lien, for certainly a party who has two liens upon the same property, and proceeds to and does foreclose one of the liens, cannot afterwards say, 'We still retain the other lien which we claimed no rights under at the time the judgment and decree was entered.' Steltzer waived whatever rights he had under the chattel mortgage and relied entirely upon the specific attachment and the bond which they had as security for the return of the truck."

There, as here, the two liens covered the same property and the same debt. There, as here, one was foreclosed and the other was not. There, as here, the assignee succeeded to all the rights of the assignor. There, as here, the opposite party is one whose rights were acquired in ignorance of the rights of the assignee. There, as here, the plaintiff having an election proceeded with the inferior lien and thereby waived the superior lien.

This view is also sustained by the decision in *Thomasville Live Stock Co.* v. *Burney,* 19 *Ga. App.* 703 (91 S. E. 1062). There, on a money rule, a creditor who owned a mortgage on realty elected not to foreclose the mortgage but to sue to judgment, levy a fi. fa. on the property, and sell the property embraced by the mortgage. The holder of a judgment younger than the foreclosed mortgage but senior to the creditor's judgment successfully claimed the proceeds from the sale of the mortgaged property. The court in that case pointed out that where the holder of the unforeclosed mortgage invokes equitable principles, such as the insolvency of the debtor, the court will apply equitable principles in a money-rule proceeding, but where such claimant invokes only legal rights the court will proceed upon legal principles. "An unforeclosed mortgage can not be the basis of a claim for money on a rule to distribute, unless it be shown that the holder of the mortgage would otherwise be remediless." *DeVaughn* v. *Byrom,* 110 *Ga.* 904 (36 S. E. 267). The intervenor bank here failed to make such equitable showing, and there is

accordingly no ground for applying equitable principles to this case.

■ General Finance & Thrift Corporation's bill of sale, signed by John E. Price on July 8, 1954, and recorded on July 13, 1954, was a prior lien to the bank's bill of sale dated June 26, 1954, and recorded July 15, 1954, as is obvious from *Scoggins* v. *General Finance & Thrift Corp.*, 80 *Ga. App.* 847 (57 S. E. 2d 686): "Under Code §§ 67-1305 and 29-401 when bills of sale to secure debt have been recorded in the county of residence of the maker thereof, such registration serves as constructive notice from the date the same are filed for record."

*Judgment reversed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I think the judgment should be affirmed. The general rule that a holder of an unforeclosed mortgage or similar security cannot in a court of law claim money which is in court for distribution should not apply in this case. The reason for the rule is that the law ordinarily requires a lien on the money derived from the sale of property which can exist only in the form of an execution. The bank in this case had an execution in the hands of the sheriff. It brought the money into court. Since Code § 24-211 provides that equitable principles apply in the distribution of money in custodia legis in a law court, I can see no difference between allowing one execution holder to show by evidence outside of his execution that his lien is superior to another because the instrument on which it is based was recorded first, and in allowing another lienholder to show by extraneous evidence that his execution has top priority by reason of the fact that under the principle of subrogation he is subrogated to the rights of one holding the oldest lien or title, especially since subrogation is not strictly an equitable remedy. *Jasper School Dist.* v. *Gormley*, 184 *Ga.* 756 (193 S. E. 248). The only prayer in the bank's intervention is for payment of the money to it and not for an application of the powers of a court of equity.