48732. SPENGLER et al. v. EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY. 48748. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY et al. v. DUKES.

EBERHARDT, Presiding Judge.

These are subrogation cases under the Workmen's Compensation Act. In Spengler it appears that Lloyd C. George was killed July 23, 1971, while in the course of his employment, as the result of an accident with a third party. Compensation was paid to his widow and minor son, but the employer's insurer gave appropriate notices to all parties as was provided by Code Ann. § 114-403[1] (Ga. L. 1922, pp. 185, 186; 1937, pp. 528, 530;

---

[1]This Code section provided: "Whenever any person is called upon to pay compensation, medical expenses

1963, pp. 141, 145) for the protection of its subrogation and lien rights.

Thereafter the widow brought suit against the third party for the husband's wrongful death, and her suit was pending when Code Ann. § 114-403 was repealed by Ga. L. 1972, p. 3, effective July 1, 1972. After the repeal the tort action was settled, and the proceeds (to the extent of $6,000) were placed in escrow with Bernice Spengler pending a determination of the insurer's claim of subrogation. Spengler, as the escrow agent, and the widow brought a declaratory judgment action in which a judgment was rendered directing that the escrow fund be paid over to the Employers Commercial Union Insurance Company and that the suit be dismissed, thus in effect holding that the repeal of Code Ann. § 114-403 was not retroactive and did not affect any claim of subrogation that the insurer had.

In American Mutual it appears that Harry Dukes suffered a compensable injury September 3, 1971, and by an agreement approved by the Board October 1, 1971

---

and/or funeral expenses on account of injury or death compensable under this Act, and such person contends that a person or persons other than the employer is liable to pay damages, on account of such injury or death, to the injured employee or those entitled to recover for the employee's death; such person called upon to make such payment may give to the persons contended to be so liable and to the injured employee or those entitled to recover on account of his death written notice of such contention and of the fact that the person giving notice is required to make such payment. Upon giving such written notice, the person called upon to make such payment shall be subrogated, to the extent of the compensation, medical expenses and/or funeral expenses payable, to all rights arising out of the injury or death which the injured employee or those entitled to recover on account of his death shall have against such notified persons, and shall have a lien therefor against the net recovery of any judgment or settlement recovered by the injured employee or those entitled to recover on account of the employee's death against any of the persons so notified."

compensation payments were made to him. On the same date, however, the insurer gave appropriate notices to the claimant, to an alleged tortfeasor against whom the claimant was pressing a claim for damages, and to the tortfeasor's insurance carrier, as required by § 114-403, asserting its subrogation and lien rights in any settlement or recovery that the claimant might obtain.

Dukes then instituted a common law action against the third party tortfeasor, which was pending when the General Assembly repealed Code § 114-403, the repealer being effective July 1, 1972.

The suit was settled July 21, 1972 for a net recovery by Dukes of $55,361.56. On August 11, 1972 the employer-carrier applied to the Workmen's Compensation Board for a determination of change in condition and sought to enforce their subrogation and lien rights against future compensation payments. Claimant resisted, contending that by the repeal of § 114-403 the subrogation rights had been abolished.

The hearing director agreed with the contentions of the employer-insurer, and entered an award by which the insurer was authorized to credit future compensation payments against its subrogation claim until the total thereof amounted to the compensation which had been paid or which it was obligated to pay, had thus been recovered, but not to exceed the net recovery which Dukes had made by his settlement with the tortfeasor. The full board, on appeal, adopted the findings and award, but on appeal to the superior court there was a reversal.

In Spengler the employee appeals and in American Mutual the employer-insurer appeals from the adverse ruling and judgment. *Held:*

1.  The questions raised in these appeals are identical, and we are disposing of each of the cases by this opinion and judgment.

2.  "The real purpose of the provisions in the workmen's compensation law for giving to the employer the right of subrogation has been described as a means for recouping the employer's loss and to prevent a double recovery by the employee and to do substantial justice." *Southern R. Co. v. Overnite Transportation Co.*, 223 Ga.

825, 830 (158 SE2d 387). See also *Travelers Ins. Co. v. Houck,* 118 Ga. App. 154, 155 (162 SE2d 781). Code § 114-403 was enacted for the benefit of employers and their insurance carriers paying workmen's compensation, *Cheek v. J. Allen Couch & Son Funeral Home,* 125 Ga. App. 438, 448 (187 SE2d 907), and gives to them an express legal right to have the amount of compensation payments reduced. *Hartford Acc. & Indem. Co. v. Fidelity & Cas. Co.,* 183 Ga. 383, 385 (188 SE 517). The relation between the employer and employee with respect to the Act is governed by a contract created by law, in derogation of the common law rights of each, and of which the insurance policy is a part. *Travelers Ins. Co. v. Ga. Power Co.,* 51 Ga. App. 579, 582 (181 SE 111). "The policy of insurance issued to the employer constitutes a definite contract among all parties concerned. The insurance company which has issued such policy is the person called upon and obligated to pay compensation under the provisions of the Workmen's Compensation Act as amended; and, to the extent of the compensation paid by it to the injured employee covered by the policy of compensation insurance, is entitled to recover from the person whose act caused the injury to the injured employee . . ." *General Acc. &c. Assur. Corp. v. John P. King Mfg. Co.,* 60 Ga. App. 281, 282 (3 SE2d 841).

3. Hence the right of subrogation upon the giving of notice as provided for by Code Ann. § 114-403 is a substantive right, vested upon the giving of the notice, and could not be changed or impaired by a subsequent statute. *Thomas v. Town of Savannah Beach,* 66 Ga. App. 178 (17 SE2d 747); Code § 102-104. In that case Code Ann. § 114-403, as it stood at the time of the employee's death, provided that the employer was entitled to set off against the compensation the *gross* amount of the recovery.

More than a year later § 114-403 was amended to provide that only the *net* amount could be set off, and the employee's widow contended that this amendment was applicable to the pending proceeding. In rejecting that contention, this court stated (p. 181): "The widow's right to compensation under the compensation Act, for the death of her husband, and to damages against the tortfeasor causing his death, accrued on the date of the

death, March 15, 1936, which was more than a year before the approval of the Act of 1937, supra. The amounts recoverable by her, either as compensation under the Act or as damages under the death statute, were fixed as of that date and could not, without depriving her of a vested right, be changed by any enactment of the legislature after that date. Likewise, any rights which the employer or the tortfeasor may have had as respected the amount recoverable against either of them were fixed and vested as of the date of the homicide, and could in no wise be changed by any subsequent statute. Whether the employer could set off the gross amount of damages recovered against the tortfeasor or paid by the tortfeasor to the plaintiff, or could set off the net amount recovered or paid, was a substantive and vested right which could not be changed by a subsequent statute. The Act of 1937, in so far as it provides for a set-off against the compensation of the 'net damages' which may be due or paid by the tortfeasor to the plaintiff, is not remedial and therefore has no retroactive effect." Accord: *McMullen v. Liberty Mut. Ins. Co.,* 119 Ga. App. 410 (167 SE2d 360); *Cheek v. J. Allen Couch & Son Funeral Home,* 125 Ga. App. 438, supra.

4. Subsequent to the decision in *Thomas v. Town of Savannah Beach,* 66 Ga. App. 178, supra, Code Ann. § 114-403 was amended to provide that the right of subrogation accrued upon the giving of written notice as provided for in the amendment. Ga. L. 1963, pp. 141, 145. Consequently, upon the giving of the notices in each of the instant cases, the employer-carrier's right to subrogation became fixed and vested as of that time. *Hartford Acc. & Indem. Co. v. Tolison,* 118 Ga. App. 660 (165 SE2d 192).

5. There is nothing in the repealing statute (Ga. L. 1972, p. 3) to authorize us to conclude that it is to have a retrospective, retroactive, or remedial application, and the instant cases are governed by our Constitution, Art. I, Sec. III, Par. II (Code Ann. § 2-302), by Code § 102-104, and by the rulings in *Wilder v. Lumpkin,* 4 Ga. 208; *Winter v. Jones,* 10 Ga. 190 (54 AD 379); *Hargroves v. Chambers,* 30 Ga. 580, 601; *White v. Ross,* 40 Ga. 339; *Dennington v. Mayor &c. of Roberta,* 130 Ga. 494 (1a) (61

SE 20); *Bank of Norman Park v. Colquitt County,* 169 Ga. 534 (150 SE 841); *Seaboard A. - L. R. Co. v. Benton,* 175 Ga. 491, 494 (165 SE 593); *West v. Anderson,* 187 Ga. 587, 588 (1 SE2d 671); *Federal Deposit Ins. Corp. v. Beasley,* 193 Ga. 727, 732 (20 SE2d 23); *Anthony v. Penn,* 212 Ga. 292 (92 SE2d 14) and similar cases, and for the same reasons are not controlled by the rulings in *Bank of St. Mary's v. State,* 12 Ga. 475; *Woodburn v. Western Union Tel. Co.,* 95 Ga. 808 (23 SE 116); *Western Union Tel. Co. v. Smith,* 96 Ga. 569 (22 SE 899); *Western Union Tel. Co. v. Lumpkin,* 99 Ga. 647 (26 SE 74); *Kelly v. Hall,* 191 Ga. 470 (12 SE2d 881); *City of Valdosta v. Singleton,* 197 Ga. 194 (28 SE2d 759); *Franklin v. Harper,* 205 Ga. 779, 791 (55 SE2d 221); *Fulton County v. Spratlin,* 210 Ga. 447 (80 SE2d 780); *Fulton Bag & Cotton Mills v. Williams,* 212 Ga. 783 (95 SE2d 848) and similar cases, where no vested rights were involved.

Claimants place great reliance upon the line of cases beginning with *Bank of St. Mary's v. State,* 12 Ga. 475, supra, continuing particularly through *Fulton County v. Spratlin,* 210 Ga. 447, supra, but a careful reading of them reveals without any peradventure that they have no application to the situations here.

The *Bank of St. Mary's* and *Western Union* cases all involved proceedings to collect penalties, and in each of them it appeared that the law providing for collection of the penalty had been changed or repealed by a subsequent statute. In *Hargroves v. Chambers,* 30 Ga. 580, 602, supra, an action for debt, the court in distinguishing the penalty cases, pointed out that there is and can be no vested right to collect a penalty until a final judgment has been obtained. The court asserted, after citing numerous authorities: "The courts held in all the cases that the repeal of the law imposing the penalty defeated the recovery, and all concede that *if the right was a vested one, or was secured by contract,* a repeal of the law could not take away the right." (Emphasis supplied.) This was also the holding in *Woodburn v. Western Union Tel. Co.,* 95 Ga. 808, supra, which cited and relied upon the *Bank of St. Mary's* case, and likewise in *Western Union Tel. Co. v. Smith,* 96 Ga. 569, supra. The headnote decision of *Western Union Tel. Co. v. Lumpkin,* 99 Ga. 647, supra,

also a penalty case, cites for its authority the *Smith* case. As noted in these cases, a repeal of the penalty statute is itself a remission of the penalty. The case of *Kelly v. Hall*, 191 Ga. 470 (2), supra, involved a suit for punitive damages in a libel action. It appeared that pending the action a statute had been enacted providing that absent notice from the party libeled to the publisher and an opportunity to effect a correction, no punitive damages could be recovered. The court held that nothing prevented the legislature from abolishing the right to punitive damages where there had been no notice — such damages amounting to a penalty. In *City of Valdosta v. Singleton*, 197 Ga. 194, supra, the city contemplated the issuance of revenue certificate bonds for the purchase of an electric distribution system, and certain taxpayers sought to enjoin issuance of the bonds. After the grant of an injunction the revenue certificate law was amended to exclude electric distribution systems as a matter for which the bonds could be issued, and it was held that even though the trial court may have erred in its judgment under the law as it stood at the time, the amendment to the law *impaired no vested right* under the prior law and it was applied in affirming the judgment. In *Fulton County v. Spratlin*, 210 Ga. 447, supra, a declaratory judgment action was sought by a deputy clerk of Fulton Superior Court who had reached the mandatory retirement age under a legislative act which he contended changed the term of his office under a prior Act. But the court held that he had no vested right in holding the public office (this had nothing to do with his right to pension or retirement benefits, which is vested), and that it was proper to apply the last Act as it affected him. In *Fulton Bag & Cotton Mills v. Williams*, 212 Ga. 783, supra, it appeared that the legislature has abolished the right of a taxpayer to take as a deduction on his state income tax returns the amount of his federal income taxes. The court held that allowance of the deduction was purely a matter of grace extended by the state — a privilege, and not a vested right. Consequently, upon passage of the Act abolishing the deduction, it applied to returns for taxes on income earned during a portion of the year prior thereto, and to years on which it was

sought to apply a carry-back of losses.

The test is whether there was a *vested* right. If so, no subsequent legislative Act could impair it; but if not, there is no bar to a change or abolition of it at any time before it becomes fixed by a judgment. Code § 102-104 (Const. Art. I, Sec. III, Par. II; Code Ann. § 2-302). In the cases sub judice the carriers' right to subrogation vested upon the giving of notice, as the statute then required and provided, and their rights could not thereafter be impaired by a subsequent abolition of subrogation in workmen's compensation cases.

In like manner for the reason that the res judicata aspect of an award of compensation is substantive and vested, we have held that the 1968 amendment to § 114-709 providing that a change in condition as relates to §§ 114-404 and 114-405 shall mean "solely an economic change," is a substantive change and could not be applied to awards which antedated the amendment. *McMullen v. Liberty Mutual Ins. Co.,* 119 Ga. App. 410 (167 SE2d 360); *Noles v. National Engine &c. Co.,* 119 Ga. App. 833 (169 SE2d 185); *Hartford Accident &c. Co. v. Carroll,* 121 Ga. App. 78 (172 SE2d 869); *City of Atlanta v. Price,* 121 Ga. App. 340 (2) (173 SE2d 750); *Hopper v. Continental Ins. Co.,* 121 Ga. App. 850 (176 SE2d 109); *Jenkins Enterprises v. Williams,* 122 Ga. App. 840 (178 SE2d 926). The right afforded by the notice given prior to the date of the amendment changing the law is vested and a subsequent change in the law, if applied to these cases, would run afoul of the Constitution, Art. I, Sec. III, Par. II (Code Ann. § 2-302), and Code § 102-104.

6. It is irrelevant that at the time of the giving of the notice or at the effective date of the Act of 1972, repealing § 114-403, there had been no recovery of damages or settlement effected by the employee against the third-party tortfeasor, because the right of subrogation became vested upon the giving of the notice. It is true that in *Travelers Ins. Co. v. Bagwell,* 116 Ga. App. 675 (158 SE2d 267), a case of attempted intervention by the employer's insurance carrier in an action for damages by the injured employee against the third-party tortfeasor, we interpreted a Supreme Court case as holding that the right of subrogation alone as provided

for by a prior § 114-403 was not sufficient to authorize such intervention, and we ruled that the lien provided for by § 114-403, as amended by Ga. L. 1963, pp. 141, 145, against the employee's net recovery in addition to subrogation, afforded no basis for intervention since "the 'recovery' is not in existence and the recovery is not the res in controversy, but is created by a judgment favorable to the employee." Hence we held that the right to intervene under cited cases is dependent upon "rights in a res which is the subject matter of the controversy and the assertion of a *right* already in existence as to the *res* also already in existence." (Emphasis supplied.)

Whatever may be the rules and restrictions as to *intervention*, § 114-403, as amended by Ga. L. 1963, pp. 141, 145, did not provide or contemplate that a recovery or judgment be already in existence before the *right to subrogation vests*. This section, before its repeal, provided: *"Upon giving such written notice,* the person called upon to make such payment *shall be subrogated,* to the extent of the compensation, medical expenses and/ or funeral expenses payable, *to all rights* arising out of the injury or death which the injured employee or those entitled to recover on account of his death shall have against such notified persons, *and* shall have a lien therefor against the net recovery of any judgment or settlement recovered by the injured employee or those entitled to recover on account of the employee's death against any of the persons so notified." (Emphasis supplied).

In *Cheek v. J. Allen Couch & Son Funeral Home,* 125 Ga. App. 438, supra, the employer and its carrier brought an action against the employee, the third-party tortfeasor and its insurer, seeking to enforce its subrogation rights which had not been honored in the employee's recovery from the tortfeasor although the § 114-403 notices had been sent. In defense it was urged that the one-year statute of limitation applicable to liens on personal property (Code § 67-2401 (2)), and the one-year statute applicable to hospital liens (Code Ann. § 67-2207), indicated that the action should have been brought within one year from the employee's judgment against the tortfeasor. In rejecting the argument as to the statute

of limitation with reference to liens on personal property, we held (p. 444): "If § 114-403 did no more than provide a lien upon the judgment or settlement obtained by one to whom compensation had been paid, and the suit were seeking no more than a foreclosure of the lien, this position might be sound. But § 114-403 does two things — it provides a right of *subrogation* to the party who has been obliged to pay the compensation, and in addition provides a *lien* on the judgment or settlement, which is in the nature of a *security for the money to which the right of subrogation exists.* Foreclosure of the lien is not the only remedy available; the holder of the subrogation right may, as was done here, sue upon that right, just as the holder of a chattel mortgage might sue on the debt without foreclosing the lien." In holding that the hospital-lien statute had no application, we pointed out (p. 445) that "no right of subrogation is provided under it." We concluded (p. 445) "that an appropriate statute relative to a limitation of time for bringing the action for the enforcement of subrogation rights under Code Ann. § 114-403 is that for money had and received under Code § 3-706, for we have held that this is a basis for enforcing the right."

Hence as the statute says, there is not just a lien against the *recovery,* but a subrogation "to all rights" which the employee may have against the notified third persons, particularly his cause of action. By giving notice prior to the repeal of § 114-403, the compensation carrier became subrogated to this cause of action and stood in the employee's shoes with relation to the tortfeasor causing the injuries.[2] To hold that the legislature could abolish

---

[2]"Subrogation originated in equity; and in the absence of statute the right to subrogation, or the right to be subrogated, that is placed in the shoes of another, is not enforceable as such in an action at law. [Cits.] The reasons underlying the adoption of the doctrine of subrogation by courts of equity are to a great extent substantially the same as the reasons underlying the adoption of the remedy of money had and received by courts of law. Subrogation is not, strictly speaking, a remedy, but is rather an equitable principle engendering

the right of the carrier, who stands in the employee's shoes, to proceed against the tortfeasor, would mean that the legislature could also abolish the cause of action of the employee himself, or could repeal the wrongful death statute tomorrow and cause all pending wrongful death claims simply to abate, or could otherwise affect the status of the parties as to a liability which had become fixed at the time of the injury or death. This the legislature cannot do. *Seaboard A. L. R. Co. v. Benton,* 175 Ga. 491, 494, supra; *Mayor &c. of Savannah v. Hartridge,* 8 Ga. 23 (9); *Bussey v. Bishop,* 169 Ga. 251 (150 SE 78, 67 ALR 287); *Bank of Norman Park v. Colquitt County,* 169 Ga. 534 (150 SE 841); Code § 102-104.

7. The lien against the employee's recovery from the tortfeasor is in aid of, or is security for, the right of subrogation, which became a valuable, *vested right* in the instant case *upon giving notice,* and the lien right can no more be interfered with than the subrogation right.

8. "*A constitutional Act of the legislature is equivalent to a contract, and when performed, is a contract executed; and whatever rights are thereby created, a subsequent legislature cannot impair.*" (Emphasis supplied.) *Winter v. Jones,* 10 Ga. 190 (5), supra; *Franklin v. Mayor &c. of Savannah,* 199 Ga. 426, 429 (34 SE2d 506); *Hargroves v. Chambers,* 30 Ga. 580, 602, supra. "A repealing act will not be given a retroactive operation so as to divest previously acquired rights or to impair the obligation of a contract previously made by virtue of and pending the existence of such law." *Bank of Norman Park v. Colquitt County,* 169 Ga. 534 (3), supra. Accordingly, the subsequent repeal of § 114-403 could not divest the employer-carrier's right to take credit against future compensation and medical payments to the extent of the net recovery from the tortfeasor, but not exceeding the total compensation to be paid.

*Judgment affirmed in No. 48732; reversed in No.*

---

a cause of action enforceable in equity." *Jasper School District v. Gormley,* 184 Ga. 756, 759 (193 SE 248). See also *Lee v. Holman,* 182 Ga. 559 (186 SE 189); *Cornelia Bank v. First Nat. Bank of Quitman,* 170 Ga. 747 (154 SE 234).

*48748. Bell, C. J., Hall, P. J., Deen, Quillian, Clark and Stolz, JJ., concur. Pannell and Evans, JJ., dissent.*

Case No. 48732: ARGUED NOVEMBER 6, 1973 — DECIDED MARCH 14, 1974 — REHEARING DENIED MARCH 29, 1974 —

*Adams, O'Neal, Hemingway & Kaplan, H. T. O'Neal, Jr.,* for appellants.
*George N. Skene,* for appellee.

Case No. 48748: ARGUED NOVEMBER 8, 1973 — DECIDED MARCH 14, 1974 — REHEARING DENIED MARCH 29, 1974 —

*Brackett, Arnall & Stephens, H. P. Arnall, H. A. Stephens, Jr.,* for appellants.
*Mundy, Gammage & Cummings, E. Lamar Gammage, Jr., William W. Mundy,* for appellee.

PANNELL, Judge, dissenting.

If I felt this court was bound by the decision in *Thomas v. Town of Savannah Beach,* 66 Ga. App. 178 (2) (17 SE2d 747) I might be constrained to the majority view. This decision was by three judges, one of whom concurred in the judgment only (Judge Felton). I agree with Judge Felton that the judgment was correct and that the rights of the employer or insurer under then, Code § 114-403, had become vested and were unaffected by the amendment of 1937 (Ga. L. 1937, p. 528), changing the insurer's right to subrogation to apply to the net proceeds or the net recovery as distinguished from a gross recovery in a separate suit by the claimant against a tortfeasor. In that case a judgment had been obtained and money paid in settlement of the judgment. Under these circumstances, the res, or thing, upon which the subrogation operated had become established and the rights therein vested. I do not agree, as was ruled in the *Thomas* case, that the rights of the insurer became vested in such gross recovery at the time of the injury to the employee. In the case of *Travelers Ins. Co. v. Bagwell,* 116 Ga. App. 675 (158 SE2d 267), a case of attempted

intervention by the insurance carrier in a Workmen's Compensation case where the claimant had brought a common law suit against the tortfeasor, this court held that the lien granted by Code § 114-403, as amended by Ga. L. 1963, pp. 141, 145, was not effective for the reason that it was a lien on the recovery and there being at that time no recovery, the lien was not operative. In effect, what the court held was that in the absence of a res upon which to operate, there was no lien. Under that decision, I am unable to see that a vested right has been acquired in a net recovery which did not exist at the time the law was repealed.

The case of *McMullen v. Liberty Mutual Ins. Co.,* 119 Ga. App. 410 (167 SE2d 360) (cited by the majority at the conclusion of Division 3 of the majority opinion as being in accord with the ruling in *Thomas v. Town of Savannah Beach,* supra), has nothing to do with the vesting of the insurer's rights in a recovery against a third-party tort-feasor by a claimant, but relates only to the vesting of the claimant's rights in an award already made. To this extent, and to this only, does it accord with the *Thomas* case. Neither does the case of *Hartford Acc. & Indem. Co. v. Tolison,* 118 Ga. App. 660 (165 SE2d 192), cited at the end of Division 4 of the majority opinion, support the conclusion of this Division of the majority opinion that the giving of a written notice of lien, provided by the statute, caused a vesting of the lien in a recovery not then had or existing. In that case, the recovery against the third-party tortfeasor was existing and was held by the claimant, and no written notice of lien had been given. In reaching a conclusion that the insurer could still give a notice, the court said (p. 661): "It is readily apparent from the plain wording of the statute that it is only 'upon giving such written notice' that a lien against the recovery and right to subrogation arises by virtue of that statute." "The recovery" referred to in this statement was a recovery already had and existing, and further the language quoted is not a holding that upon the giving of a written notice a lien *is vested* in a recovery not in existence.

The legislature, by repealing in its entirety Code § 114-403, granting subrogation rights to the Workmen's

Compensation insurer, indicated, as a matter of public policy, that the privilege granted (see *Fulton Bag & Cotton Mills v. Williams*, 212 Ga. 783 (1) (95 SE2d 848)) was no longer in effect. This being so, the contract of insurance, if it contained provisions therein to the contrary, was to that extent unenforceable. See *State Farm Mut. Auto. Ins. Co. v. Harper*, 125 Ga. App. 696 (1) (188 SE2d 813). To hold otherwise would contravene the very act of the Legislature in repealing the privilege granted and permit the insurer, by contract, which the employee has not seen or agreed to, to bind him in a matter which was not to his benefit and contrary to public policy. I concede that as a third-party *beneficiary* he may be considered to be a party to the contract (see *General Acc. &c. Corp. v. John P. King Mfg. Co.*, 60 Ga. App. 281, 282 (3 SE2d 841) and Code Ann. § 3-108), but he is not bound by a provision not for his benefit but contrary to and in derogation of the benefits granted to him by the Compensation Act. In the *General Acc. &c. Corp.* case, supra, cited by the majority, the contract of insurance was in accordance with the Workmen's Compensation Act as it then existed, and any agreement in the policy in reference to subrogation is held to refer to that provided by statute. See *Glens Falls Indem. Co. v. Liberty Mut. Ins. Co.*, 202 Ga. 752, 758 (44 SE2d 543), in which it was said: "The subrogation clause, being a part of the policy issued in conformity with the Workmen's Compensation Law, was obviously intended to apply in favor of the compensation-insurance carrier making the payment as against a tortfeasor who inflicted the injury for which compensation was made as provided by law. Code § 114-403 as amended." It would seem to follow that if the statute be repealed, the provision in the contract is likewise abrogated.

I, therefore, conclude that neither by any vested right nor by the provisions of the contract can the insurer here prevail as against the claimant or any recovery had by him in his action against the joint tortfeasor.

I would affirm the judgment in case No. 48748, and reverse the judgment in case No. 48732.

EVANS, Judge, dissenting.

These two subrogation cases are similar. While the

facts are different, the rights of the parties are virtually the same.

Lloyd C. George was killed on July 23, 1971, while working within the scope of his employment. He left a widow and minor son. Workmen's compensation payments were made to the widow, but the employer's insurer put everyone concerned on notice of its subrogation rights to money paid out by it because of the death of the employee under the workmen's compensation statute then in effect.

Thereafter, his widow brought a tort action against one she considered liable for her husband's wrongful death. The subrogation statute, to wit, Code Ann. § 114-403, was repealed by Ga. L. 1972, pp. 3, 4; which repeal law became effective on the 1st day of July, 1972. The widow and defendant in the tort action reached a settlement of her suit on the 30th day of November, 1972, *which was after the repeal of the subrogation statute.* (In Dukes, settlement was made on July 21, 1972.)

Periodic payments of workmen's compensation were made to the widow until her remarriage in January, 1972, and thereafter payments continued to her as the legal guardian of the minor son. Such payments were made by agreement of the parties and approval of the board.

A sum of $6,000 was placed in escrow with one Bernice Spengler which was derived from (and as a part of) the settlement of the tort claim, pending a determination as to the validity of the insurer's claim of subrogation.

Spengler, the escrow agent, and Carolyn Ann McDonald, the widow who had remarried, individually and as the legal guardian of her minor son, brought the present declaratory judgment action to determine who owned the $6,000 in escrow. They contended that as the subrogation law had been repealed before settlement of the tort claim, this sum belonged to the widow; and further that the right to collect future payments of workmen's compensation was still in the minor son. They contended the rights of the minor son to payments of workmen's compensation were not affected by the wrongful death case, because he was not a party thereto.

The defendant-insurer answered, and admitted certain of the material allegations, but denied that plaintiffs were entitled to so much of the fund as was represented by payments it had made as workmen's compensation. Defendant also prayed that the court declare it was not required to make future payments of workmen's compensation to the minor son.

Motion for judgment on the pleadings was filed by the plaintiffs. After hearing same, the court directed plaintiff Spengler to pay over to defendant all funds paid by the defendant as workmen's compensation; and that all remaining funds be paid to the widow; and that the workmen's compensation payments to the minor cease. It then dismissed the plaintiffs' complaint. Plaintiffs appeal.

The rights and liabilities of the parties in the Dukes case are virtually the same.

The right of the insurer to subrogation was terminated by repeal of the statute on subrogation. If the insurer's right to such subrogation had vested prior to repeal of the statute, it would have been entitled to seek return of the payments it had made as workmen's compensation. But no such right inhered in the insurer here because the law as to subrogation was non-existent when its alleged rights occurred, to wit, on date of settlement of the tort action. There is no necessity of considering whether or not the lower court erred in denying the minor's rights to workmen's compensation, because the entire judgment is erroneous.

"The repeal of a statute without reservation takes away all remedies given by it and even defeats all actions and proceedings pending under it at the time of its repeal, and this is especially so where the statute repealed is one creating a cause of action. 82 CJS 1012, Statutes, § 439a. *Western Union Tel. Co. v. Lumpkin,* 99 Ga. 647 (27 SE 74); *Fulton County v. Spratlin,* 210 Ga. 447 (1) (80 SE2d 780); *Fulton Bag &c. Mills v. Williams,* 212 Ga. 783 (3) (95 SE2d 848)." *Gold v. Pioneer Fund,* 107 Ga. App. 855, 860 (132 SE2d 144).

In *Western Union Tel. Co. v. Lumpkin,* 99 Ga. 647, supra, the cause of action imposing penalties on telegraph companies was repealed by the General

Assembly and became law after judgment but while that case was on appeal. The Supreme Court held the judgment was not legally final when the repealing Act was enacted, thereby requiring that the judgment be set aside; the court had no further jurisdiction of the case, citing *Western Union Tel. Co. v. Smith,* 96 Ga. 569 (23 SE 899). See also *State Hwy. Dept. v. Calhoun,* 114 Ga. App. 501 (5) (151 SE2d 806).

In the case of *Fulton County v. Spratlin,* 210 Ga. 447, supra, plaintiff contended that he was appointed to a four year term of office as Deputy Clerk, and the civil service laws at the time of his appointment allowed him to continue to the end of his term before mandatory retirement at age 70. But this law was repealed and he was required to retire immediately upon becoming 70 years of age. Citing the *Lumpkin* case and others, the Supreme Court held that the fact that he obtained a status under the provisions of one law does not amount to a contract or create a vested right whereby the legislature could not repeal the old and pass a new one.

Again, in *Fulton Bag & Cotton Mills v. Williams,* 212 Ga. 783, supra, it is held that the statutory allowance to include as deduction Federal Income Taxes paid by a taxpayer, was a privilege allowed the taxpayer as a matter of legislative grace, which could be taken away at any time; and no vested right accrued to the taxpayer when the statute was repealed.

Did the defendant obtain a vested right to subrogation by paying the workmen's compensation after notice of his right to subrogation? In *Jasper School District v. Gormley,* 184 Ga. 756, 760 (193 SE 248), a discussion of subrogation is found and it is referred to as *a remedy.* If the remedy be repealed without reservation, then no right under it remains. No contractual or vested rights have accrued in this case to prevent the legislators from abolishing all rights previously granted by it.

Therefore, even though provisions of the workmen's compensation law provided for subrogation, as to those who were required to make payments to an injured or deceased employee under the workmen's compensation statute, the General Assembly of Georgia, in its wisdom, repealed this subrogation statute and abolished such

remedy, and left no right of subrogation remaining. And that was the situation that existed at the time of settlement of the tort cases in this matter. The trial court erred in awarding the funds in escrow; and also erred in declaring that payments of workmen's compensation to the minor child should cease.

The opposite result occurred as to Dukes. The only subrogation authorized by law was that of equitable subrogation; and the General Assembly having abolished same, before the settlement between the parties, there remained nothing for the Board of Workmen's Compensation to consider. There simply was no remedy for the insurer-employer and no one against whom either might seek redress.

I would reverse the judgment in Spengler (No. 48732); and affirm in Dukes (No. 48748). I therefore dissent.