## 49663. TURPIN v. WILSON.

CLARK, Judge.

This is a case of first impression: Can a purchaser of shares of stock who might otherwise be barred from recovery by reason of being considered a "participant" in a transaction violative of our "blue sky law"[1] recover in assumpsit the amount paid a seller who fails to deliver the securities for reasons beyond seller's control? Under the facts of the instant case we answer in the affirmative.

As originally filed the complaint of plaintiff's decedent, Frank A. Wilson, sought rescission of a stock purchase agreement under the provisions of the Georgia Securities Act[2] of 1957. The gravamen of the suit at that

---

[1] This vivid phrase came into our nomenclature in 1917 when the U. S. Supreme Court in Hall v. Geiger-Jones Co., 242 U. S. 539, 550 (37 SC 217, 61 LE 480) said that such statutes dealt with "speculative schemes which have no more basis than so many feet of 'blue sky.' "

[2] This statute was replaced in toto by the Georgia Securities Act of 1973 (Ga. L. 1973, p. 1202), which was extensively amended by the 1974 Legislature (Ga. L. 1974, p. 284).

stage was an alleged failure by four defendants to satisfy the registration or exemption requirements of the Act. Named as original defendants were Tico, Inc., National Bank of Georgia, Robert L. Fine and A. Herbert Turpin.

Following discovery all defendants moved for summary judgment contending plaintiff could not avoid his purchase agreement because plaintiff's decedent had participated in the sale of the securities and was thus in pari delicto. Plaintiff thereupon filed a voluntary dismissal as to Tico, Inc., Robert L. Fine and National Bank of Georgia. Simultaneously she amended the complaint as to the remaining defendant, who is the appellant, and proceeded under a different legal theory.

Via the amended complaint, plaintiff changed position from one based upon a right of rescission of a voidable transaction under the 1957 Georgia Securities Act to one for money had and received. Each party moved for summary judgment. From the grant of plaintiff's motion for summary judgment and the denial of his own summary judgment motion, defendant brings this appeal. The order denying defendant's motion was certified for immediate review.

The evidence discloses that in early 1969, plaintiff's decedent, an administrative vice-president of Tico and president of two of Tico's subsidiaries, expressed an interest in purchasing some stock of Tico, Inc. He subsequently agreed to buy 11 1/4 shares of Tico stock for $5,000. At the direction of Tico's president this sum was delivered by plaintiff's decedent to the National Bank of Georgia where it was deposited in defendant's personal account.

Shortly after delivery of plaintiff's decedent's check and receipt of the funds by reason of the deposit to his account, defendant delivered to the bank a Tico stock certificate registered in his name and representing 930 shares of common stock to cover Wilson's purchase along with sales to other employees. Until he received a letter from the bank informing him the defendant's stock certificate would soon be reissued in his name, plaintiff's decedent was unaware that defendant's stock, not Tico's was the stock which he was to acquire.

In June 1969 the 930-share stock certificate was sent

by the National Bank of Georgia to Howard Hussing, secretary of Tico, Inc., for cancellation and reissuance in the names of those employees who had purchased stock, including Wilson. Upon receipt of this request, Hussing consulted counsel who advised that in his opinion "the transfer is contrary to the Georgia securities law, and consequently, not capable of being perfected." (R. 161). This occurred in October 1970 and this suit was then filed in November.

With Hussing in possession of the stock certificate registered in Turpin's name, he avers he stands ready to reissue the stock upon a finding that the transaction did not violate the Georgia "blue sky laws." Defendant admits that the $5,000 was deposited in his checking account and that the stock was not registered with any state or federal agency, but he denies that the sale was unlawful.

1. Section 13 of the Georgia Securities Act of 1957 (Ga. L. 1957, pp. 134, 161) reads, in part: "Every sale or contract for sale in violation of any of the provisions of this Act, or of any order issued by the commissioner under any provision of this Act, shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction upon tender to the seller, in person or in open court, of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section."

In *Nash v. Jones,* 224 Ga. 372 (162 SE2d 392), our Supreme Court considered the problem of "whether a participant serving as an officer and director of a corporation at the time stock of the corporation is issued can recover the sums paid by him for a portion of said stock under the purchaser's remedies section of the Georgia Securities Act (Ga. L. 1957, pp. 134, 161; Code Ann. § 97-114) because said stock was not properly registered in accordance with the Act." In concluding

that the purchaser could not recover, the court stated, "The clear terms of the purchasers' remedies section (Ga. L. 1957, pp. 134, 161; Code Ann. § 97-114) provides every director or officer who participated or aided in any way in making a sale of securities in violation of the Georgia Securities Act shall be jointly and severally liable to the purchaser. Thus, the plaintiff, *by the terms of the statute under which he seeks to recover,* is equally as guilty of violating the Georgia Securities Act as is the individual defendant . . . Thus the plaintiff, being *in pari delicto* with the defendants, cannot recover the sums he paid for the stock issued in violation of the Georgia Securities Act." (Emphasis supplied.) This decision, relied upon by the defendant, is not apposite here since under the amendment to the complaint plaintiff abandoned and has not sought recovery via the purchasers' remedies section of the 1957 Act.

Although the evidence as to the extent of plaintiff's decedent's participation in the sale is not susceptible to summary adjudication, we must conclude that the plaintiff can recover in this action for money had and received as a matter of law. Our conclusion stems from Paragraph (c) of Section 13 of the Georgia Securities Act of 1957 which states: "Nothing in this Act shall limit any statutory or common law right of any person in any court for any act involved in the sale of securities." Thus, the remedy afforded in the 1957 Act is not the sole remedy which a purchaser of securities is entitled to pursue. And it is not inappropriate, as in the case at bar, for a plaintiff to pursue recovery on a theory of assumpsit or money had and received where defendant fails to deliver the securities contracted for and refuses to refund the monies received by the purchaser.

As our Supreme Court noted in *Jasper School District v. Gormley,* 184 Ga. 756, 758 (193 SE 248): "An action for money had and received is founded upon the equitable principle that no one ought unjustly to enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it, and ex aequo et bono it belongs to another. *Merchants Bank of Macon v. Rawls,* 7 Ga. 191

(50 AD 394); *Alexander v. Coyne,* 143 Ga. 696 (85 SE 831, LRA 1916D, 1039). Thus an action for money had and received is a substitute for a suit in equity (*Culbreath v. Culbreath,* 7 Ga. 64, 50 AD 375), and, while founded on causes of action arising out of application of equitable principles, is an action at law by reason of its origin as a mode of action in the common law courts. *Culbreath v. Culbreath,* supra."

Defendant is in receipt of $5,000 which has been deposited to his account by plaintiff's decedent. Although the nondelivery of defendant's stock may have been due to circumstances beyond his control, nevertheless, the fact remains that the securities contracted for have not been delivered. In short, defendant has retained plaintiff's decedent's money and has given nothing in return; he has unjustly enriched himself at the expense of the plaintiff; and he should not be permitted to retain this money which, in equity and good conscience, belongs to another.

Defendant contends that if we permit plaintiff to recover pursuant to a theory of money had and received, we allow her "to accomplish by indirection exactly what the law would not permit through direct action." We disagree. As pointed out above, the purchaser's remedy section of the Georgia Securities Act of 1957 does not restrict the purchaser's pursuit of any statutory or common law right.[3] Thus, the plaintiff is not circumventing the statutory purchaser's remedy provision; she is merely pursuing another remedy as permitted by law.

Defendant contends that plaintiff's summary judgment motion should not have been granted because Hussing stands ready to reissue the stock upon a legal determination that this can be done without violating Georgia's blue sky laws. This contention is not meritorious. The burden of proving that the transaction did not violate the Securities Act lies not upon the plaintiff, but upon the defendant. Ga. L. 1957, pp. 134,

---

[3] This salutary provision has been preserved in the new Georgia Securities Act as ¶(e) of Section 15, p. 317 of the 1974 Georgia Laws.

162. Thus, it was not incumbent upon the plaintiff to demonstrate that the transaction in question was illegal.

The record is devoid of any evidence showing that the National Bank of Georgia acted on behalf of plaintiff's decedent. Thus, defendant's assertion that delivery of the stock certificate to the bank constituted delivery to plaintiff's decedent is also without merit.

2. As we affirm the grant of plaintiff's summary judgment motion, defendant's enumeration assigning error upon the denial of his summary judgment is moot.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 10, 1974— DECIDED NOVEMBER 7, 1974.

*Fierer & Devine, Foy R. Devine, Wayne L. Cardon,* for appellant.

*Harris & Martin, James F. Martin, Robert B. Harris,* for appellee.